```
               UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

MATASHA FORD                                               PLAINTIFF

VS.                                CIVIL ACTION NO. 3:10CV362TSL-MTP

MADISON HMA, INC. D/B/A                                    DEFENDANT
MADISON COUNTY MEDICAL CENTER

### MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Madison HMA, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Matasha Ford opposes the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

Following the termination of her four-month employment with defendant Madison HMA as a PRN[1] hospital admission clerk, plaintiff filed the present action alleging she was terminated on account of her race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, and further setting forth state law claims for breach of contract; negligent hiring, supervision and retention; and negligent and intentional infliction of emotional distress. Madison HMA denies plaintiff was terminated because of her race and asserts it terminated her

---

[1] "PRN" is derived from the Latin phrase "pro re nata" and means "as needed; as the circumstances require." See PRN.2012. In Merriam-Webster.com. Retrieved April 30, 2012, from http://www.merriam-webster.com/dictionary/PRN.

due to frequent absences and her unwillingness to work "as needed." Defendant seeks summary judgment on plaintiff's federal claims, contending plaintiff cannot establish her *prima facie* case and in any event cannot demonstrate pretext in the face of its legitimate non-discriminatory reason for her termination. It seeks summary judgment on her state law claims on various grounds.

In support of its motion, defendant has adduced evidence demonstrating the following. On October 2, 2008, Sue Staton, a Caucasian and the Admissions Department supervisor, hired plaintiff as a PRN admitting clerk. At the hospital, admitting clerks register patients for in-house, out-patient and emergency services. At the time Ford was hired, Madison HMA employed five full-time admitting clerks with the remainder of the shifts being filled from a pool of PRN employees. According to defendant's Human Resources Director, "[t]here was no set number of PRN positions that needed to be maintained; instead, new employees would be hired for the PRN pool when the PRN pool could not or was not completing the schedule." Upon hiring plaintiff, Staton communicated to Ford that as a PRN employee, as opposed to a full-time hospital employee, she was not eligible for fringe benefits, was not guaranteed a certain number of hours, would be expected to work holidays, nights and weekends and would be expected to fill in the schedule as needed.

2

As a PRN admitting clerk, plaintiff was subject to being called in at the last minute, but plaintiff primarily worked assigned shifts according to a schedule which Staton posted at least one to two weeks in advance. In the event an admitting clerk, whether full time or PRN, could not work a scheduled shift, he or she could arrange for a co-worker to cover the shift, subject to Staton's approval. When an admitting clerk called in unable to work the day of a scheduled shift, Staton either had to find a replacement for the shift or work the shift herself.

By November 25, 2008, seven weeks into her employment, plaintiff had twice called in on a day she was scheduled to work to report that she would not be able to work. On the first occasion, she stated that she had forgotten her children's doctor's appointments; on the second, after already having been unavailable to work for six days due to illness, she reported she could not come to work because she could not find childcare for her two teenaged children. Due to Ford's unavailability, Staton covered her shifts.

Although Staton counseled Ford in late 2008 regarding her attendance problems, encouraging Ford to be available "as needed" and to report to work as scheduled, Ford's attendance problems continued in January, with her reporting to work late three times and twice calling in unavailable to work on a scheduled day. Finally, on January 30, 2009, Ford called to report that she would

3

not be at work for her scheduled 2:30 p.m. to 10:30 p.m. shift due to "personal reasons." Ford's absence from her post again required Staton to work an additional shift. When Staton's supervisor, Sonya Taylor, who was aware of Ford's attendance problems, learned that Staton was again working Ford's shift, she made the decision to terminate Ford. According to Taylor's affidavit, she contacted Ford and informed her she was being removed from the schedule due to her absences and her unavailability to work as needed. On February 21, 2009, Ford was removed from Madison HMA's payroll. Taylor, who is also black, denies that her decision to terminate Ford's employment was motivated by Ford's race.

Plaintiff's version of the circumstances of her termination differ somewhat from defendant's. According to plaintiff, when she called in on January 30 to report that she would not be coming in, Staton advised her at that point that she was being taken off the schedule until further notice and that Staton would get back in touch with her. Sometime in February, after not hearing further from Staton, she called Staton, wanting to know if she had been fired or laid off. Plaintiff states that Staton informed her that she had been laid off and directed her to call human resources to see if she was still on the payroll. At her deposition, Ford testified that when she called the Human Resources Department in February, she was told that Staton had indicated that she had voluntarily quit and that if she wanted to

4

return to work, she would be required to fill out a new application, which she did.

As Ford lacks direct evidence of discrimination, the analysis of her Title VII and § 1981 race discrimination claims is governed by a well-established <u>McDonnell Douglas Corp. v. Green</u> methodology:

> A plaintiff must first establish a prima facie case of disparate treatment on the basis of race by demonstrating that: (1)[she] is a member of a protected class; (2)[she] was qualified for the position; (3) despite [her] qualification, [she] suffered an adverse employment decision made by a defendant; and (4)[she] was replaced by, or received less favorable treatment than, similarly situated non-African Americans.

<u>Smith v. Potter</u>, 629 F. Supp. 2d 644, 650 (S.D. Miss. 2009) (citing <u>McDonnell Douglas</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).  Secondly, the employer must articulate a legitimate, nondiscriminatory reason for its decision.  <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000) (citation omitted).  "The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status."  <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003).

Initially, Madison HMA contends in its motion that plaintiff cannot establish a prima facie case of discrimination, first, because she cannot prove she was qualified for the position in light of her inability to work "as needed," and second, because she cannot demonstrate either that she was replaced by someone

5

outside of her class or that she was treated differently than a similarly situated employee under nearly identical circumstances.[2] It contends, alternatively, or additionally, that she cannot establish that its proffered legitimate nondiscriminatory reason for her termination is pretext for discrimination. In response, Ford maintains that she has sustained her burden to create a genuine issue of material fact both as to her prima facie case and on the issue of pretext.

In the court's opinion, plaintiff has failed to establish a prima facie case. Even assuming she was qualified for the position of PRN admitting clerk[3] and as such has established the second element, she has failed to establish the fourth element as she has not shown that she was replaced by someone outside the protected class, shown that she received less favorable treatment than any similarly situated non-African American employee or

---

[2] There is no dispute that plaintiff can prove the first and third elements of her prima facie case.

[3] See Berquist v. Wash. Mut. Bank, 500 F.3d 344, 350-51 (5th Cir. 2007) ("Although Washington Mutual submitted evidence that Berquist's supervisors were not pleased with his performance, this evidence does not prove a lack of qualifications at the prima facie stage."); Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988) ("[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.").

6

otherwise demonstrated any basis for inferring discriminatory intent.

Turning first to the question of whether Madison HMA replaced Ford with someone outside of the protected class, plaintiff points out that the next two PRN admitting clerks hired by defendant following her termination, Debbie Carby and Mary Mansell, were both white.  Defendant does not dispute this, but has presented undisputed proof that while no one was hired specifically to replace Ford, the next person assigned to work in the admitting clerk PRN pool was an African American, Etta Ceasar, who transferred from another facility in early February 2009, four months before Carby and Mansell were hired in June 2009.  Indeed, Ceasar was hired by Staton as a full-time admitting clerk in May 2009, a month before Carby and Mansell were hired.  As defendants point out, Carby and Mansell were only hired after Ceasar began work as a full-time employee.

Plaintiff could alternatively establish her prima facie case with proof that she received less favorable treatment than an employee or employees outside the protected class.  See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997) (stating that "[w]hile not outcome determinative," the fact that the person who replaced the fired employee was of the same national origin "is certainly material to the question of discriminatory intent"); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) ("[t]he Nieto opinion appears to allow courts to find a

7

prima facie case even where an employee has been replaced by someone of the same race"). In the court's opinion, she has failed to identify a single non-African American comparator. Ford takes the position that although she and Cassandra (Dawn) Orr, a white full-time admitting clerk, had the same supervisor, same duties and a history of absenteeism, she was terminated but Orr was not.[4] Madison HMA denies that Orr is a proper comparator to Ford. It concedes that Orr was absent from work on numerous occasions. It points out, however, that, unlike plaintiff, Orr was a long-term, full-time employee who had accumulated both sick and vacation leave and who was also entitled to and used leave under the Family Medical Leave Act such that she could not be subject to discipline with regard to her attendance. Indeed, it has presented proof that the majority of Orr's absences constituted qualified leave under the FMLA or hospital policy. Given these significant distinctions, the court readily concludes that Ford and Orr were not similarly situated. See Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1155 (7th Cir. 1997) ("[F]ull-time employees are simply not similarly situated to part-time employees."); see also Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1115 (10th Cir. 2005) (plaintiff's status as hourly

---

[4] At the time plaintiff was terminated, Dawn Orr was on a temporary unpaid leave of absence as part of a reduction in force. Orr was recalled to work in February 2009, after plaintiff's termination. In her deposition, plaintiff seemed to suggest that she was replaced by Orr; but since Orr was never terminated and was merely on leave of absence, plaintiff's position in response to the motion is that Orr was her comparator, not her replacement.

employee and her duties in that position were not sufficiently similar), overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 659-60 (8th Cir. 2001)(full-time employee could not use part-time employee as comparator).[5] In sum, plaintiff has failed to demonstrate that she was treated differently from a similarly situated employee under like circumstances.

Plaintiff has offered no other evidence suggestive of discriminatory intent to satisfy her burden as to the fourth element of her prima facie case.[6] In fact, the evidence tends to

---

[5] The court would also note that in her first seven weeks of employment, plaintiff missed work six days due to illness, and yet there is nothing to suggest that defendant took those absences into account in deciding to terminate plaintiff's employment. Rather, according to defendant, she was terminated because of her other absences due to childcare issues, her children's appointments and unspecified "personal reasons."

[6] Citing Nieto v. L & H Packing Co., 108 F.3d 621, 624 n.7 (5th Cir. 1997), plaintiff declares in her response that in the Fifth Circuit, courts can find a prima facie case even where an employee has been replaced by someone of the same race. See also Williams v. Trader Publ'g Co., 218 F.3d 481, 485 (5th Cir. 2000) (stating "it is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a prima facie case under Title VII") (citing Hornsby v. Conoco, Inc., 777 F.2d 243, 246-47 (5th Cir. 1985)). That is certainly true, but to sustain her burden as to the fourth element of her prima facie case, plaintiff must still come forward with sufficient evidence suggestive of discriminatory intent. Scott v. DMN Inc., No. 01-10655, 2002 WL 243295, 1 n.3 (5th Cir. 2002). Obviously, evidence of disparate treatment will suffice. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 n.3 (5th Cir. 2000) (citing evidence of disparate treatment with respect to similarly situated non-white employees as evidence that would satisfy fourth element). And plaintiff does contend she has presented sufficient

9

belie any discriminatory motivation. Plaintiff contends she was fired by Staton; but it is undisputed that Staton is the one who hired her. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 228 n.16 (5th Cir. 2000) ("The 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination."). Further, although plaintiff testified in her deposition that she perceived Staton to be hostile toward

---

evidence of disparate treatment. However, she is incorrect to the extent she implies she can prove her prima facie case even without proof of disparate treatment.

While the Fifth Circuit does not appear to have specified any other specific type of proof that would satisfy the fourth element, see Jefferson v. Xerox Corp., No. 4:01-CV-0919-A, 2002 WL 1841011, 3-4 (N.D. Tex. Aug. 8, 2002) (noting that Nieto and Williams "are not helpful in explaining how the burden is otherwise met. They simply state that just because a plaintiff is replaced by someone within his class does not negate the possibility that the plaintiff's discharge was motivated by discrimination."), one court has stated that "[a]ny demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes." Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996) (cited in Nieto); see also Majdzadeh-Koohbanani v. Jaster-Quintanilla Dallas, LLP, No. 3:09-CV-1951-G-BK, 2010 WL 5677911, 6 (N.D. Tex. Dec. 20, 2010) ("cause of action for discrimination may lie even where the employee who replaces the terminated plaintiff is of the same protected class as the plaintiff, so long as the plaintiff can show that he suffered an adverse action that an employee of an unprotected class would not have suffered"); Johnson v. CDI Corp., Civil Action No. H-08-2107, 2009 WL 6443118, 6 (S.D. Tex. Sept. 8, 2009) ("A plaintiff can fulfill the fourth element if he proves that he suffered an adverse employment action under circumstances in which an employee of a different race would not have suffered that action, irrespective of the race of his eventual replacement, if there is one"). Here, however, the only alternative proof offered by plaintiff relates to her assertion that a similarly situated white employee received more favorable treatment.

10

her, she conceded that Staton treated the other African-American clerks with respect. Moreover, plaintiff has not challenged defendant's proof that the only employee from her department laid off as a result of the reduction in force was the sole Caucasian employee in the department. Nor does she challenge defendant's proof that of the twelve admitting clerks hired or transferred into the department by Staton during her tenure as supervisor, nine were African-American. Indeed, it was Staton who transferred Etta Ceasar, African-American, into the department as part of the PRN pool almost immediately after plaintiff's termination, and then hired her into a full-time position. Alternatively assuming defendant's version is correct, then plaintiff was fired, not by Staton, but by Taylor, who is African-American. These circumstances are hardly suggestive of a discriminatory motive.

Based on all of the foregoing, the court concludes that plaintiff has failed to prove her prima facie case, and for this reason, defendant is entitled to summary judgment on plaintiff's race discrimination claim.[7]

---

[7] The court need not proceed beyond consideration of prima facie case where plaintiff has failed to adduce sufficient evidence to convince the court that her race was a motivating factor in her employer's decision to terminate her. See Byers, 209 F.3d at 427. See also Francis v. Glaxosmithkline, Inc., No. Civ.A. 02-1592, 2003 WL 22715634, 5 (E.D. La. Nov. 14, 2003) (finding it unnecessary to proceed beyond prima facie case in McDonnell Douglas analytical framework where plaintiff who was replaced by a member of her protected class failed to present other evidence of discriminatory intent); Jefferson, 2002 WL 1841011, 3-4 (rejecting plaintiff's attempt to "jump ahead" to issue of prextext, and observing that "defendant's reason for terminating plaintiff simply does not matter unless plaintiff has

Defendant additionally seeks summary judgment as to plaintiff's putative state law claims. Specifically, regarding the breach of contract claim, defendant points out that plaintiff has conceded that she was an at-will employee such that the breach of contract claim fails as a matter of law. Shaw v. Burchfield, 481 So. 2d 247, 253-54 (Miss. 1985) (recognizing that Mississippi follows employment at-will doctrine, under which "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible."). As pertains to the intentional infliction of emotional distress claim, it asserts that plaintiff has failed to allege or present any evidence of extreme and outrageous conduct on defendant's part, but rather relies upon the same factual predicate which underlies her race discrimination claim. Brown v. Inter-City Federal Bank for Sav.. 738 So. 2d 262, 265 (Miss. App. 1999) ("Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress.") (internal citations and quotations omitted).

Finally, it contends plaintiff's negligence claims, negligent infliction of emotional distress and negligent hiring, supervision

---

first established his prima facie case").

12

and retention, are barred by the exclusivity provision of the Mississippi Workers' Compensation Act, Miss. Code Ann. § 71-3-9. See McNeill v. City of Canton, Miss., Civil Action No. 3:06cv74 DPJ-JCS, 2008 WL 249437, 15 (S.D. Miss. Jan. 29, 2008) ("Under Mississippi law, proof of an intentional tort is required to circumvent [the] exclusive remedies available under workers' compensation law; allegations sounding in negligence are inadequate to avoid the exclusivity provision.") (citation omitted).  Plaintiff has not responded to defendant's well-supported motion as to these claims.  The motion will be granted.

    Based on all of the foregoing, it is ordered that Madison HMA's motion for summary judgment is granted.

    A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

    SO ORDERED this 30th day of April, 2012.

                                  /s/ Tom S. Lee_____
                                  UNITED STATES DISTRICT JUDGE